968 F.2d 1227
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
William R. COLLIER and Interstitial Systems, Inc.,
Plaintiffs-Appellees,
v.
AIRTEX, INCORPORATED, Defendant-Appellant,
and
Zonatherm Products, Inc., Defendant.
 No. 91-1197.
 United States Court of Appeals, Federal Circuit.
 May 15, 1992.
Rehearing Denied June 22, 1992.
Suggestion for Rehearing In Banc
Declined July 8, 1992.
 
 Before NIES, Chief Judge, and CLEVENGER and RADER, Circuit Judges.
 NIES, Chief Judge.
 
 
 1
 This is an appeal from the judgment of the United States District Court for the Northern District of Illinois, No. 87 C 4097 (October 9, 1990), entered on a jury verdict holding Airtex, Inc. and its sales representative Zonatherm Products, Inc. (collectively "Airtex"), liable for infringement of U.S. Patent No. Re 33,220 (the '220 patent) and that Airtex's infringement was willful.[1] We affirm.
 
 I.
 
 2
 Airtex asserts that the verdict of infringement, either literal or under the doctrine of equivalents, resulted solely from erroneous claim interpretation. We review a question of claim interpretation as a matter of law. Senmed Inc. v. Richard-Allan Medical Indus., 888 F.2d 815, 818, 12 USPQ2d 1508, 1511 (Fed.Cir.1989). Airtex asserts that the vertical wall panels of claim 1 form horizontal internal hallways within each level which serve to isolate the electrical cables.[2] Collier responds that the vertical wall panels (1) create vertical passageways, or chimneys, which carry isolated conditioned air or electric cables to the work floor and (2) establish "big boxes" by sealing each level at the outer perimeter of the floor. To ascertain the meaning of patent claims we look to the claim language, the specification, the prosecution history, and the prior art. Smithkline Diagnostics, Inc. v. Helena Laboratories Corp., 859 F.2d 878, 882, 8 USPQ2d 1468, 1471 (Fed.Cir.1988).
 
 A. The Claim Language
 
 3
 The first step in claim interpretation is to examine the claim language. ZMI Corp. v. Cardiac Resuscitator Corp., 844 F.2d 1576, 1579, 6 USPQ2d 1557, 1560 (Fed.Cir.1988). Claim 1 requires vertical wall panels located between the conductor support floor and the working area floor which "subdivide" that area into a "mechanically isolated conductor plenum" to receive and isolate the conductors. In the present context, "plenum" refers to an enclosed space; therefore, the vertical wall panels of claim 1 subdivide the region between the conductor floor and the working floor into a mechanically isolated space.
 
 
 4
 Airtex asserts that while vertical wall panels along the periphery may divide the levels into "big boxes," it is the internal hallways which subdivide the region between the floors as required in claim 1. However, a more appropriate reading of claim 1 is that the same vertical wall panels which define the mechanically isolated vertical passageways subdivide the area within an already established "big box" into a mechanically isolated conductor plenum. The "big box" may be established either by placing vertical wall panels along the perimeter of the floor system or by using vertical perimeter walls in conjunction with the already existing interior walls of the computer room. The vertical wall panels also create the vertical passageways, thus, defining two mechanically isolated spaces; the conductor plenum and the air plenum.
 
 
 5
 Interpreting the claim to require horizontal hallways, as argued by Airtex, would conflict with other language within claim 1. Claim 1 requires vertical wall panels which define a "mechanically isolated, vertically extending passage extending from beneath [the] conductor support floor through [the] isolated conductor plenum and to the working floor" (emphasis added). If the conductor plenum is a hallway which receives insulated electrical conductors and a vertical passageway passes through this hallway, the conductors must somehow extend across the vertical passageway, thus defeating a main objective of the invention--the separation of conditioned air and electrical conductors.
 
 
 6
 Airtex asserts that the horizontal hallways may be wide enough to include a vertical passageway and leave space for placement of the conductors within the hallway yet outside the vertical passageway. Under this strained interpretation of claim 1, every time the electrical cables are relocated a hallway must be relocated, and more importantly, every time a hallway is relocated a vertical passageway must be repositioned to pass through the new hallway--a result which is inconsistent with Collier's goal of making computer relocation and installation inexpensive and efficient.
 
 B. The Specification
 
 7
 Another factor used in claim construction is the patent specification. McGill Inc. v. John Zink Co., 736 F.2d 666, 674, 221 USPQ 944, 949 (Fed.Cir.), cert. denied, 469 U.S. 1037 (1984). As noted above, if claim 1 is interpreted in the manner proposed by Airtex, a vertical passageway must be relocated every time the layout of conductors is changed.
 
 
 8
 In contrast to Airtex's interpretation, Collier's view of claim 1 corresponds to one of the goals of the invention--to provide a structure which will enable a computer to be installed or moved about or modified at a minimum cost without violating codes or regulations. Under Collier's interpretation the conductor plenum is the area between the walls which define the vertical passageway and the walls which create the "big box," while the vertical passageway is, naturally, the area within the vertical passageway's wall panels. This interpretation allows unrestricted relocation of cables anywhere within the conductor plenum without requiring relocation of the vertical passageways, a result which cannot be achieved under Airtex's interpretation of claim 1. Therefore, Collier's interpretation best complies with the specification.
 
 C. The Prosecution History
 
 9
 The prosecution history also provides guidance on claim interpretation. Smithkline, 859 F.2d at 884, 8 USPQ2d at 1473. Airtex extensively argues that its interpretation of the '220 patent claims is supported by the prosecution history, specifically the examiner's "Reasons for Allowance" in light of the May patent. In the "Reasons for Allowance" for claim 1, the examiner states:
 
 
 10
 Claim 1 is deemed allowable because none of the references cited show a plurality of vertically extending wall panels that "subdivide" the region between the floor and the conductor support floor. The May reference shows a partition panel (22) that divides the working floor from a conductor support floor. It is deemed that panel (22) of May does divide the space but does not subdivide that space
 
 
 11
 ....
 
 
 12
 ....
 
 
 13
 The May reference ... does not teach one to subdivide the area between a working area floor and a lower support floor. The examiner's position is that partition (22) divides the area because it is a perimeter wall of the support floor. Also May states that his electrical conductors can be placed within the return and supply air chambers, contrary to applicants isolated wireway.
 
 
 14
 Airtex cites Jurgens v. McKasy, 927 F.2d 1552, 1557, 18 USPQ2d 1031, 1035 (Fed.Cir.), cert. denied, 112 S.Ct. 281 (1991), arguing that although the May patent does not invalidate the '220 patent, the examiner's "Reasons for Allowance" in view of May act as a restriction upon the '220 claims. However, in the present case, the examiner merely stated that May teaches a vertical wall panel that "divides the working floor from a conductor support floor" but "does not subdivide" the space created therein. This statement does not contradict Collier's interpretation. As in May, Collier's outer walls divide; however, unlike May, Collier's floor system has an inner vertical passageway comprised of vertical wall panels which subdivide the area into a vertical passageway and a conductor plenum.
 
 D. The Prior Art
 
 15
 Airtex argues that the May patent and the Wisconsin Bell floor, both of which were considered by the examiner, and a United Airlines facility floor, limit the scope of the '220 patent claims. The May patent has been addressed above in the section on prosecution history. The Wisconsin Bell floor discloses an intermediate floor comprised of slats. The slats merely support conductors and are incapable of providing a mechanically isolated conductor plenum regardless of how the vertical wall panels are placed. Therefore, the Wisconsin Bell floor does not indicate that the vertical wall panels of the '220 patent must form horizontal hallways.
 
 
 16
 Similarly, the scant evidence in the record on the United Airlines floor shows that the corners of the floor panels were cut to allow air to pass between levels. Because the floor panels are cut, the United Airlines floor, like the Wisconsin Bell floor, cannot provide a mechanically isolated conductor plenum regardless of how the vertical wall panels are positioned. Therefore, the United Airlines floor does not limit the '220 patent to vertical wall panels which form horizontal hallways.
 
 
 17
 Collier's interpretation of claim 1 conforms more closely to the logic of the language within claim 1 and the object of Collier's invention as disclosed in the specification, than does Airtex's suggested interpretation. Additionally, neither the prior art nor the prosecution history favors Airtex's version of claim 1 over Collier's version. We, therefore, conclude that claim 1 of the '220 patent does not require horizontal hallways formed by internal vertical wall panels.
 
 II.
 
 18
 We find no reversible error in this case with respect to the court's jury instruction on willfulness. Further, the jury's finding of willfulness is amply supported by the evidence of record.
 
 III.
 
 19
 Having considered all other arguments raised in Airtex's appeal, we conclude that the judgment of the district court must be affirmed.
 
 IV.
 
 20
 Collier's request for attorney fees, pursuant to Fed.Cir.R. 38, is denied.
 
 
 
 [1]
 The '220 patent includes claims 1-7 of U.S. Patent No. 4,630,417 to Collier, in addition to the claims added during reissue
 
 
 [2]
 Airtex argues that all asserted claims require "hallways" which Airtex's device does not have. We need address the issue of claim interpretation only in the terms of claim 1